May it please the court, Counselor, my name is Lawrence O'Neill and I represent Mark Burris in this case. This is a direct appeal following a jury trial where Mr. Burris was found guilty of first degree murder involving the stabbing death of his wife, Melanie Burris. Mr. Burris has raised three issues in this appeal. In argument one, I asked this court to reverse and remand for a new trial because the trial court committed a plain error when it failed to comply with Supreme Court Rule 431B in Voidere. The state concedes that the trial court failed to comply with the rule when it did not ask the prospective jurors if they understood and accepted the four basic principles outlined in the rule. Even though defense counsel did not object to the court's non-compliance with the rule, this court should review the issue under the closely balanced evidence prong of the plain error doctrine. Mr. Burris was charged with first degree murder in that with the intent to kill or do great bodily harm, he stabbed Melanie Burris with a knife, thereby causing her death. Mr. Burris at trial did not deny that he stabbed her, but he raised the defense of self-defense and, as an alternative, that he committed second degree murder for an unreasonable belief that his acts were justified. The trial court found that there was some evidence to submit instructions on self-defense and second degree murder. The evidence was closely balanced because Mr. Burris presented a credible defense that he acted in self-defense or, in the alternative, that he committed the lesser offense of second degree murder. Mr. Burris testified that in a jealous rage, Melanie attacked him with a knife. They fought and struggled over the knife, and Mr. Burris testified that he believed his life was in jeopardy. He eventually obtained possession of the knife and ended up stabbing her. Mr. Burris' claim is plausible, and no direct evidence rebutted his assertion that he acted out of fear for his life when Melanie attacked him with a knife. The only evidence presented as to the encounter and the events involved in this incident were from Mr. Burris, and again, his testimony was not directly rebutted. As such, the outcome of the case depended largely on the jury's assessment of Mr. Burris' credibility. Thus, even though the jury found that Mr. Burris acted with the intent to kill or do great bodily harm, finding him guilty of first degree murder, the evidence was yet closely balanced for purposes of the plain error rule as indicated by Mr. Burris' credible claim of self-defense and second degree murder, and by the trial court's finding that there was some evidence to support instructions on self-defense and second degree murder. Wasn't there strong evidence, though, Mr. O'Neill, of three blunt head traumas and 11 stab wounds, any three of which were fatal? There was that evidence, Your Honor, and I would argue and submit that perhaps that would diminish the defense of self-defense, but in unreasonable self-defense, I think that the jury could be found guilty of second degree murder in unreasonable self-defense, even if the jury finds that the amount of force used was unreasonable. So maybe the 11 stab wounds and the blunt trauma would imply that a self-defense would have been effective, but certainly he could still be found guilty of lesser offense of second degree murder based upon his unreasonable use of force in the case. But alternatively, the jury could have found that he was approached by her, somehow got the knife or knocked her in the head, whatever, and then in a fit of rage, just stabbed her repeatedly with the intent to kill. I mean, is that possible? Well, and evidence with the jury found. Right. Yes, but, you know, so there aren't going to be enough evidence to convict, but that doesn't mean that the evidence is also not closely balanced for purposes of the plenary document. And to that, Mr. Burris' testimony was the only evidence about what occurred at the actual incident. It's not directly contradicted. And the jury could still have found him guilty of second degree murder based upon an unreasonable belief in self-defense. But really, the only thing he has to say, the only thing any defendant has to say is the victim came at me first. Correct. That's it. I mean, so not every case is closely balanced just because the defendant gets up and testifies. Obviously, the victim is dead, so she can't say anything. Correct. So we are supposed to say it's closely balanced based upon just the testimony of the defendant. Well, the trial court found that there was some evidence to support self-defense, assessing Mr. Burris' testimony, that there was some evidence for self-defense, some evidence for unreasonable self-defense in determining and submitting the instruction. So there is that, Your Honor. So perhaps if there was other evidence that would have diminished Mr. Burris' claim of self-defense or unreasonable self-defense, the judge would not have given those instructions. But the judge here found that there was some evidence to support those instructions. So I would suggest in this particular case, Mr. Burris, without any other evidence to directly contradict Mr. Burris' testimony or to corroboration of the state's case, that in this particular case there was some evidence for the instructions and there was evidence that was closely balanced for purposes of the plain error document. Just because there's evidence of self-defense and an instruction is given, does that mean that we can equate that with closely balanced? I mean, you're relying on the fact that an instruction was given. And certainly a judge out of an abundance of caution could do that where the defendant testifies. But do you think that is your argument that because of that instruction that the evidence was closely balanced? No, I don't say that in every case just because an instruction is given that the evidence is therefore closely balanced. I don't think as a rule of law I'm not advocating that. But in this particular case, the other evidence doesn't corroborate the plaintiff's case of first-degree murder to the degree that it's not closely balanced. In other words, the evidence isn't overwhelming pertaining to self-defense or unreasonable self-defense. So we can't, as Justice Moore just indicated, we can't say that by stabbing her with a knife 11 times and having three blows to the head aren't evidence that would be overwhelming that this wasn't closely balanced? Not for an unreasonable self-defense. A reasonable self-defense, I think that you could stab somebody 11 times unnecessarily, perhaps, and the jury find you still get the second-degree murder because finding that you reasonably believed your self-defense was necessary, but the amount of force used was unreasonable. So because the evidence was closely balanced, the trial court committed first-pronged plaintiff, and because the trial court is fairly complied with the rule, I ask this court to reverse the conviction and amend for a new trial. In argument two, I ask this court to reverse Mr. Burroughs' conviction because he was denied a fair trial when the trial court allowed him to evidence a letter he had written to Melanie because the letter was not relevant to show his state of mind or motive at the time of the incident, but yet was highly prejudicial. When the police arrived at the Burroughs' home after Mr. Burroughs called 911, they found on the bed of the master bedroom a paper, pen, and envelope addressed to Melanie, and inside the envelope was a handwritten letter from Mr. Burroughs to Melanie. The letter was not dated. The defense filed a fair trial motion to eliminate, to bind the omission of the letter, arguing that it was vague and prejudicial. The court denied the defendant's motion and allowed the letter to show Mr. Burroughs' motive and state of mind. The letter was omitted and published to the jury. The trial court is... I don't understand why you think... I mean, the letter ends, I will always love you, I will never hurt you again. Why doesn't that help your client? Why doesn't that help my client? Why does that language not help your client? Why would he not want that end? Well, because... It's really a love letter. Well, the prosecutor in closing argument argued that the statement, reference to the letter that I will never hurt you again, suggests that he had hurt her physically before. And the prosecutor emphasized that several times in the closing argument. But that didn't necessarily mean physical hurt. It's just emotional. Correct. Correct. But I'm arguing that the repeated references to that by the prosecutor, the jury was inclined to believe that Mr. Burroughs had harmed her physically in the past, which was inconsistent with the claim of self-defense. So it was the prosecutor's use of the language in the letter that... Not only that. I mean, it was exacerbated by that. But the jury could read that. The jury read that letter and they would... It's reasonable to believe that the jury would interpret that to mean I will never hurt you again, but Mr. Burroughs meant that he had harmed her physically in the past. I see that. I mean, it's clearly, just reading it as someone who never saw it before, he makes these statements like my soul belongs to you, my heart belongs to you. I mean, it's almost like a love letter. That's part of my argument, Your Honor, that it was irrelevant for the state to admit it to show motive and state of mind to commit first-degree murder. But why did he argue exactly the opposite? Because he thought it would be open to interpretations by the jury to speculate the worst, that Mr. Burroughs would have, like the state argued, he had harmed her before. He, the prosecutor, argued that if the letter suggests that he was saying that if you don't reconcile with me, I will hurt you again. So it was open, I think the defense counsel, rightfully, believed that it presented too much opening for speculation for the jury and prejudice for whether Mr. Burroughs. Thank you. Thank you. Let's see. I took a few extra minutes, so if for some reason you need them, you'll have them. Thank you, Your Honor. May it please the court, counsel, Chelsea Kasten on behalf of the state. Your Honors, we start this argument today knowing that the defendant killed his wife. We know that he stabbed her. We know that he left the knife on the microwave. We know that he called the police. And then he proceeded to trial with the claim of self-defense or second-degree murder, that it was an unjustified belief that he was protecting himself. This does not give rise, in light of all the evidence, to a plain error review of 431B. We have conceded that the court failed in asking if they both understood and accepted, during the court year, its principles. But that said, this is not a case that gives rise to a people versus SEBI review of the case. This is not an instance of a he said, he said, where there's no circumstantial evidence to support the fact that he very violently murdered his wife in first-degree murder. As Your Honor noted, it's 11 stab wounds. One was to the back, and the one to the back was one of the fatal stab wounds. One of the ones were the aortic artery. I can't recall which one off the top of my head. In addition to that, there were three blunt force hits to her head. One possibly could have been from striking the floor. Two of them were from the Hennessy bottle that was also found at the crime scene, Your Honors. And that's just from the body. In addition to that, there was also testimony of prior threats that the defendant had made against his wife. Admittedly, one of those witnesses did not get along with the defendant, and they both made that clear on the stand. However, the other one, the defendant himself said, we don't have any issues with each other. And yet, she still testified to a prior threat. I think it's clear, Your Honor, that this evidence was not so closely balanced that the heir alone threatened to tip the scales of justice. The circumstantial evidence contradicted his testimony when his wife was not able to because she was dead. The body alone shows considerably more than just an unjustified belief that his act was justified. It was violent rage that drove him to murder her. And I believe, if Your Honors wish to review a full review of the evidence, it's presented by the state in its brief, and it begins starting on page 5, if the court wishes to review all the evidence that was presented by the state. Unless the court has any other questions about that issue, I'll move on to issue 2. Go ahead. Specifically, the admission of the letter, Your Honors. It did go to the motive and state of mind of the defendant at the time, particularly relevant because of its close proximity to the murder scene. In fact, it could arguably be part of the murder scene where it was found in the bedroom, which was next to the dining room where the trail of blood began. In the bedroom, there was also overturned furniture next to the bed where the letter was on top of a writing pad and a pen. There was a photograph of the married couple on the bed next to two remotes, demonstrating it was a maid bed. It was ruffled, meaning that it had been recently placed there. The trial court did have to consider the admissibility of the evidence, and it did make repeatedly clear to the jury that this was only going to the motive and state of mind of the defendant in murdering his wife. It actually cut off the state at one point to remind the jury this letter is only going to the motive and state of mind of the defendant. Its close proximity to the victim at the time of the murder when the police arrived after the 911 call clearly went to what was going through the defendant's head at the time that led up to the events of her murder. We don't have testimony from Melanie Burris because she couldn't testify on her own behalf, so the state did have to rely on the circumstantial evidence, and this letter did go to help show his motive and state of mind. Clearly he was not wanting her to leave him, and he still loved her. What progressed to her murder, we might not know all the facts, but it certainly did pair with the prior threats that he had given to show that at least, well, it clarified for the jury exactly why he might have been motivated to murder his wife. One can reasonably assume from the physical evidence from Melanie's battered body that it would have been sufficient for the jury to find the defendant guilty of first degree murder even without the letter, but at least the letter was able to clarify for the jury exactly why he was acting the way that he did. Can we review the admission of that letter on abuse of discretion? Yes, Your Honor, it is an abuse of discretion standard because it was at the sound discretion of the trial court on whether or not it was admissible. Finally, Your Honor, just briefly addressing the ineffective assistance of counsel claim, this is actually a really unique situation where the state of mind of the trial counsel is available in the record because there was a hearing for post-trial motions where he actually testified, and at C-791 he stated that he had made a strategic choice to create more doubt as to the sufficiency of the evidence to make the police and the state look foolish. In this particular case, the state had absolutely no idea that this was the wrong photograph, and once it became clear that it was the wrong photograph that had been introduced, the officer went to the police department, found the correct photograph, and then the correct photograph was given to the jury with an explanation of what had occurred. And in explaining... The argument being if they didn't know even which photograph they took of him that day, then how could they possibly be believed on these other things? Yes, Your Honor, it was, and I believe the trial counsel even stated that he was testifying that he purposely chose during the questioning to use the same line of questioning that he had for the letter as he did with the photograph to draw parallels between the two to try to create a doubt by the jury of they can't even get a photograph right, what if they messed something else up too? It was a very strategic choice by counsel in choosing which, I guess not to raise which photograph was being used, and the state didn't know, I think that's clear from the record, they didn't mention the photograph again once the error had been corrected at trial, but then defense counsel was able to discuss during closing arguments, the state can't even get the right photograph of the defendant, what else have they missed in this case? And particularly where the state had such compelling evidence against the defendant, this was a hard case for defense counsel to try winning on behalf of his client. Her body alone would have made it very difficult for a jury to find him exercising self-defense or second-degree murder in this particular case. So he did make a very strategic choice, and it did not rise to the level of ineffective assistance of counsel. Did the physician who conducted the autopsy testify? Yes, Your Honor, she did. She was the one who spoke to the stab wounds and the blunt force trauma to the head, and also discussed from viewing the photograph that the defendant only had defensive wounds on his arm, whereas her body told a very different story. You mentioned, though, that one of the stab wounds that was sufficient enough to kill her was in the back. Yes, Your Honor. There were 11 stab wounds, 10 in the front, one in the back, meaning that she tried to flee. And that was a significant enough wound that it could have killed her. Yes, Your Honor. There were three stab wounds that were sufficient enough, according to the testimony, that they would have been terminal. Right, but one was in the back. Yes, one was in the back, two were in the front. The remaining ones were from torso up. And then you got to the head, and it also showed a battered face in addition to the hits to the head. Were the photographs of the crimes seen or admitted? There was only one photograph admitted, Your Honor. The state was very mindful in admitting the evidence that it didn't want to prejudice the jury by oversharing. It also, I believe, showed a life photo of the defendant from when she was alive before her death. Okay. Unless the court has any other questions? We would ask you. Was the photograph that was on the bed with the letter also admitted? I actually don't remember off the top of my head, Your Honor. I know you can see it in one of the photographs that was taken of the crime scene, and you can see the frame resting on the pillow, I believe. I don't remember if the actual photograph was admitted or not, though. I'm sorry. I can't recall. Unless the court has any other questions? Okay. We would ask that you don't affirm the ruling of the lower court. Thank you. Rebuttal? Yes, Your Honor. I will please the court. Regarding the first argument, I'm closely balanced. Counsel mentioned that evidence that suggested that Mr. Burris did not act in self-defense was that he had made threats before to Melanie. Those were admitted. There were statements that a woman by the name of Scruggs and Blakes testified that they heard Mr. Burris say things, something like, if I can't have you, nobody else will, and threatened to harm her. But the probative weight from that evidence is negligible, in that those statements were made six months and six weeks prior to this present incident. So I don't think it tips the scale away from closely balanced. It was admitted, and it goes to the weight of the evidence, but I don't think it's a very strong weight. And secondly, threats that somebody may make to a person six weeks or six months ago does not indicate that they will commit first-degree murder against that person in the future. Many people make statements during arguments that they have no intention to follow through on. So those threats are not so probative, but they hurt Mr. Burris' claim of self-defense. In argument two in the letter, the counsel argues that it shows that there was a motive and state of mind because it was found in close proximity to the incident. However, the evidence is not established that that letter was written on that day. It was found on the bed. Sure, Mr. Burris testified that he had written that letter to Melanie three years ago when they had separated, and he put it in the dresser drawer, and the letter was not dated. So the close proximity argument the counsel makes is not particularly strong considering there's no evidence that it was written on that day. Couldn't it have been the focus of the argument, though? I mean, it's obviously out of the dresser drawer. I found his testimony interesting in that regard, that he had put it away. So how does it get out? Well, the defense argument that the dresser drawer where that letter was was open in the bedroom when the police came in, and the implication was suggested by defense counsel was that the police had taken it out of the drawer and put it there. Now, obviously, that testimony by Mr. Burris in the photograph, it's not conclusive that the police took that letter out of the drawer and put it on the bed, but it certainly suggests or corroborates in a sense Mr. Burris's claim that he didn't put it there, he didn't know how it got on the bed, and it suggests possibly that the police put it there. And there was no direct evidence to contradict Mr. Burris's claim in that regard. Now, regarding argument three, I think it affected the assistance of counsel. Counsel's strategy, and this goes to the counsel's strategy, whether he should have objected to the state's presentation of the incorrect photograph of Mr. Burris in People's Exhibit 30. The state witness, Detective Williams, testified at trial that that photograph was taken the day after the murder, the death of Melanie. In that photograph, Mr. Burris is very casual, smiling, bemused, which was inconsistent with the defense of self-defense and reasonable self-defense. Well, it turns out that that photograph was not taken the day after Melanie's death. It was taken three months before. However, where defense counsel's strategy fails is that the defense counsel didn't explain to the jury, there was no explanation to the jury as to how the state introduced an incorrect photograph. And more importantly, there was no explanation to the jury or statement to the jury informing them that Detective Williams was incorrect when he testified that I took that photograph of Mr. Burris the day after the murder. This left the jury with Mr. Burris testifying that it wasn't taken the day after and Detective Williams saying it was taken the day after. Now, the jury would obviously believe the police officer. So defense counsel, even if he had a strategy to argue that the mishandling of the photograph by the police somehow shows that the police investigation was taken in fraud, counsel let down terribly by not explaining to the jury that Mr. Detective Williams' testimony that he took the photograph of Mr. Burris the day after the killing was wrong, was incorrect. And that is very prejudicial and shows unreasonable assistance of counsel. Okay. Thank you very much. Thank you, Your Honors. Thank you both for your arguments today. We'll take the matter under advisement and an order will be issued in due course. That concludes the oral arguments that were set on today's docket.